**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


RICK SUTLEY                  )
      Plaintiff,           )
                   )
vs.                    )        **C.A. No. 07-105Erie**
                   )        **District Judge McLaughlin**
INTERNATIONAL PAPER COMPANY, )        **Magistrate Judge Baxter**
      Defendant.         )


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION


## I.    RECOMMENDATION

_____It is respectfully recommended that the motion for summary judgment filed by

Defendant [Document # 12] be denied.

It is further recommended that the motion for summary judgment filed by Plaintiff

[Document # 15] be granted in part and denied in part, in that summary judgment be granted in

favor of Plaintiff, but that this matter be remanded to the Plan Administrator.


## II.    REPORT

### A.    Relevant Procedural History

On May 9, 2007, Plaintiff filed the instant complaint pursuant to Employee Retirement

Income Security Act ("ERISA"). Plaintiff claims that Defendant, International Paper Company

(hereinafter, "International Paper"), wrongfully denied his disability retirement benefits. As

relief, Plaintiff seeks the recovery of benefits and enforcement of his rights under International

Paper's Retirement Plan. Document # 1, page 3.

This action is governed by the Employee Retirement Income Security Act of 1974, as

amended ("ERISA"), 29 U.S.C. § 1001 *et seq*. ERISA Section 502(a)(1)(B) permits a

participant in an eligible pension plan to bring a civil action in federal court to recover pension benefits, to enforce rights under the terms of the plan, or to "clarify his rights to further benefits under the terms of the plan." 29 U.S.C. §§ 1132(a)(1(B).

Following a period of discovery, the parties have filed cross-motions for summary judgment.

In his motion for summary judgment, Plaintiff argues: 1) substantively, Defendant's denial of benefits lacks any legally competent evidence to support the determination that Plaintiff is not disabled; and, 2) procedurally, Defendant failed to provide Plaintiff notice regarding an appeal of the initial denial under the terms of the Plan, as well as ERISA regulations; and 3) procedurally, Defendant engaged the same decisionmaker for both the initial denial and the appeal violating the terms of the Plan, as well as ERISA regulations. Document # 16. In its motion for summary judgment, Defendant argues that the denial of benefits was not arbitrary and capricious and should be upheld. Document # 13. The parties have filed briefs in opposition to the pending motions for summary judgment.

The issues are fully briefed and are ripe for disposition by this Court.


**B.        Standard of Review – Summary judgment**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has

failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Company, 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Company v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Company of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

## C.      Factual History

Defendant International Paper is the Plan Administrator of the Retirement Plan at issue in this case.  Document # 1, Complaint, ¶ 2; Document # 4, Answer, ¶ 2.

The Plan grants to the Plan Administrator or its designees the "discretionary power and ... authority ... to interpret the Plan."  The Plan Administrator's interpretations and decisions "shall be conclusive and binding upon all persons having any interest in or under the Plan..." Document # 14-5, page 99.  The Plan also grants to the Plan Administrator the discretionary power and authority "to determine the amount of benefits which shall be payable to any person ..." and  "to decide questions concerning the Plan ... in accordance with the provisions of the Plan."  Id.

The Plan defines "disabled" as "incapable of performing any occupation or employment for which the participant is qualified by education, training or experience and which is likely to be permanent during the remainder of the Participant's life, provided that the Plan Administrator finds, and a physician or physicians designated by the Plan Administrator certify, that the participant is disabled."  Document # 14-6, page 2.

As an employee of International Paper, Plaintiff was a participant in the Retirement Plan, and as such, was eligible to apply for disability retirement benefits under the Plan.  Document # 11, Defendant's Concise Statement of Material Facts, ¶¶ 3, 4; Document # 19, Plaintiff's Response to Defendant's Concise Statement, ¶¶ 3, 4. The parties agree that Plaintiff was hired by International Paper on July 10, 1972, and that his last date of active employment was March 8, 2004.  Document # 11, Defendant's Concise Statement of Material Facts, ¶ 1; Document # 19, Plaintiff's Response to Defendant's Concise Statement, ¶ 1.

On August 30, 2004, Plaintiff filed an application for disability retirement benefits, stating the cause of disability was "breathing difficulty, asthma, bronchitis, and shortness of breath."  Document # 14-3, pages 13-17. On October 17, 2004, Defendant received a Functional Assessment Form from Plaintiff's treating physician, Dr. Heidi Gunn, indicating that Plaintiff's diagnosis was asthma.  Id. at 18-22.  Dr. Gunn stated the Plaintiff was totally disabled due to his inability to tolerate any exertion as of March 9, 2004.  Id. at 19.  Accordingly to Dr. Gunn,

4

Plaintiff could stand or walk one to three hours per eight hour day, and could sit one to three hours per eight hour day. Plaintiff could reach above shoulder level, bend, stoop, climb, use his feet for repetitive reining and pushing and could use his hands for simple grasping, pushing and pulling and fine manipulation. Further, Dr. Gunn reported that Plaintiff had "severe limitations of functional capacity" and was "capable of minimal (sedentary) activity (70-100%)." Id. at 21-22. The medical records indicate that Plaintiff was taking Albuterol, Singulair, Advair, Xopenex, Nasonex, Protonix, Neurontin, Lexapro, and Zyrtec D. Id. at 28.

The pulmonary function study relied upon by Dr. Gunn was conducted by William Sullivan, M.D., on August 17, 2004 and showed:

> severe obstructive disease with an FEV1 of 0.93 liters. Lung volumes show mild restrict disease with a total lung capacity of 60%. The patient received aerosolized Xopenex 1.25 mg with no significant bronchodilator response. Arterial blood gases show a pH of 7.40, PCO2 of 38, PO2 of 60 on room air. Significantly decreased for the patient's age.

Id. at 25. On August 24, 2004, Dr. Sullivan diagnosed Plaintiff with severe obstructive disease, extrinsic asthma, and allergic rhinitis. Id. at 26.

Wausau Benefits, Inc., a third-party vendor retained by Defendant International Paper to assist in the review of claims pursuant to the Retirement Plan, began reviewing Plaintiff's medical records relating to his claim for disability benefits. The purpose of the review was for Wausau Benefits to provide a recommendation regarding whether Plaintiff was qualified for disability retirement benefits. By letter dated October 20, 2004, Wausau requested additional medical records. Id. at 44.

Walter Baigelman, M.D., was commissioned by the Plan to perform an independent review of Plaintiff's claim for benefits. Dr. Baigelman, who is board-certified in internal medicine/pulmonary disease, did not examine Plaintiff, but reviewed the medical records of Drs. Sullivan, McLaughlin, and Gunn and issued his report on November 17, 2004. Dr. Baigelman opined that Plaintiff's pulmonary function tests were inadequate and reported that "the latest test with the most severe abnormalities shows terrible patient effort. This data is being inappropriately used to label the patient as having severe obstructive disease." Id. at 49-55. Dr. Baigelman concluded that "the participant should be capable of performing sedentary tasks to

which he is qualified by education, training and experience.  Furthermore, it is likely that once the fractured ribs and associated atelectasis[1] have resolved and the patient loses weight, has his depression treated, and undergoes rehabilitation, whatever impairment was present would markedly diminished [sic] i.e. he is not disabled."  Id. at 52.  However, Dr. Baigelman deferred a final opinion based upon incomplete information and recommended "an IME (independent medical examination) upon which to render a final determination." Id. at 55.  Nurse Consultant Barbara Beastrom participated in this report.  Id.

Upon review of Dr. Baigelman's report, Wausau Benefits recommended that the Plan refer Plaintiff for an independent medical exam.  On December 3, 2004, Defendant International Paper indicated to Plaintiff that they were waiting on results from an independent medical evaluation. Id. at 45. And, by letter dated December 14, 2004, Defendant requested a sixty day extension of time from Plaintiff so that International Paper could perform the IME.  Id. at 46.  Plaintiff granted this extension of time.

The Plan commissioned Gregory Richards, M.D., a board-certified psychiatrist, to conduct an independent psychiatric evaluation and examination of Plaintiff to determine whether a psychological disorder was exacerbating Plaintiff's condition. Id. at 66-76.  Dr. Richards examined Plaintiff, evaluated his job description and reviewed his medical records.  In a report dated December 29, 2004, Dr. Richards concluded that Plaintiff's mental function was good, there was no psychiatric diagnosis, and that he was not "totally disabled from a psychiatric point of view."  Further, Dr. Richards opined that "in the absence of any psychiatric impairment, Plaintiff could not be considered totally disabled" and Plaintiff's "pulmonary condition needs to be addressed by the appropriate specialist, as this is outside my area of expertise."  Id. at 74.

The Plan also commissioned Kenneth Chinsky, M.D., a board-certified pulmonologist, to conduct an independent pulmonary evaluation.  Id. at 56-65.  Dr. Chinsky examined Plaintiff and reviewed his medical records, including x-rays, CT scans, and pulmonary function tests, as

---

[1] Atelectasis is a decrease or loss of air in all or part of the lung, with resulting loss of lung volume itself.

well as his job description, and the Training, Education and Experience form included with his application for disability benefits.  In a report dated January 26, 2005, Dr. Chinsky diagnosed Plaintiff with "severe chronic asthma with reversibility; component of chronic obstructive pulmonary disease related to former tobacco use; allergic rhinitis; and history of surgery for nasoseptal problems."  Id. at 61.  Dr. Chinsky reported that Plaintiff was dyspneic[2] at rest and that his lungs revealed "distant breath sounds with poor air movement with diffuse expiratory wheezing."  Id. at 62.  Further, Dr. Chinsky found that there were no discrepancies between Plaintiff's subjective complaints and his objective findings.  Id.  Dr. Chinsky concluded that Plaintiff was not capable of returning to any significant physical exertion, but that he was capable of returning to a sedentary or light occupation with certain restrictions. Further, Dr. Chinsky believed that Plaintiff was motivated to return to work, and that despite Plaintiff's aggressive treatment regimen, he had not reached a level of maximum medical improvement. Id. at 56-65.

A Pension Disability Review dated January 31, 2005, concluded that Plaintiff is "not disabled."  Document # 14-3, pages 77-79.  The reports of Chinsky, Richards, Gunn, Bonham, Sullivan, and McLaughlin were reviewed.  This review is signed by Nurse Consultant Barbara Beastrom, but is not signed by a doctor.  Id. at 79.

On February 15, 2005, the Plan informed Plaintiff that his claim for benefits had been denied.  Document # 14-4, page 2.  The letter explained: "You have the right to appeal the denial of your benefit claim.  To make an appeal, you must file a written request for review within 180 days of your receipt of this letter. [...] upon receipt of your request for review, the Plan Administrator will review your claim and make a final decision."  Id.

By letter dated August 1, 2005, Plaintiff appealed the denial of his claim.  Id. at 40. Plaintiff's appeal is a hand-written letter and reads in its entirety:

---

[2] Dyspneic is the medical term for shortness of breath, a subjective difficulty or distress in breathing, usually associated with disease of the heart or lungs; occurs normally during intense physical exertion or at high altitude.

To Whom it May Concern,

I would like to request a review, for my disability claim. I feel that a mistake has been made.

P.S. I would appreciate to be treated with dignity and respect at this difficult time.

Id.

On August 9, 2005, Defendant noted it received the letter of appeal without other documentation. Document # 14-3, page 10. Plaintiff contacted Defendant on August 10, 2005 to confirm receipt of the appeal and Plaintiff was advised the appeal had been received, but Plaintiff was not advised that he could provide additional documentation to support his appeal. Id. Plaintiff asked whether he should follow up with Wausau, but was advised that his information had been forwarded to Wausau and that he "should receive a follow up within 30 days." Id. By notation dated August 30, 2005, Defendant International Paper indicates "forwarding to DRC for review: no additional medical documentation was submitted for the claim which was denied previously with DRC approval. Forwarding Wausau's recommendation." Id.

To evaluate Plaintiff's appeal, the Plan commissioned William Augerson, M.D., a board-certified internist, to perform an independent medical review of the claim for benefits. Document # 14-4, pages 43-47. Dr. Augerson reviewed Plaintiff's medical records from Richards, Gunn, Bonham, Sullivan and McLaughlin. Dr. Augerson diagnosed "severe obstructive disease, extrinsic asthma, allergic rhinitis, S/P rib fractures and atelectasis circa 08/2004, and occupational history suggestive of asbestos exposure with some radiographic indications, but normal diffusion capacity." Id. at 43. The report indicates:

Studies of 8/17/2004 are said to show severe obstruction with FEV1 of 093 liters but Dr. Baigelman notes poor upstroke initially indicated weak effort, and pO2 was low at 60. bronchodilator did not alter obstruction. [...] the attending physician (AP) dr. Gunn noted some dyspnea at rest during the summer of 2004 with pauses during long sentences. Dr. Chinsky considered the member dyspneic at rest. Clinicians and examiners have generally agreed the member has a mixed set of pulmonary problems, with some COPD from prior smoking, some uncertain contribution from asbestos, and a variable component from his asthma.

8

Id. at 45. Dr. Augerson mentions that Plaintiff "is unable to do his regular heavy work, but is capable of light to sedentary work. (See IME 01/26/2005)" referring to Dr. Chinsky's report. Further, Dr. Augerson concludes:

> the accumulated data support the conclusion that the claimant is unable to perform his regular work and that this is permanent; the work is quite heavy. His pulmonary findings, however, show some variability and recently some response to bronchodilators. Even before any effort with Xolair he seems capable of at least sedentary work and perhaps even light work. Last findings suggest Class 3 pulmonary status per AMA guides. Since the claimant is capable of some gainful activity, especially if aided by vocational rehabilitation, he does not meet the plan definition of total disability."

Id. at 46. The report is signed by Dr. Augerson, and indicates that Nurse Consultants Burton and Beastrom participated in the review. Id. at 43, 48.

Defendant International Paper's records indicate by notation dated September 15, 2005, "the disability retirement committee met to review this case. It is our determination that no additional medical documentation was provided to perfect his claim. The packet was reviewed by the appropriate physician(s) and the ppt was determined to be capable of sedentary work." Document # 14-3, page 11.

By letter dated September 18, 2005, Plaintiff was notified that his claim had been denied on appeal. Document # 14-4, pages 49-50. The letter explained:

> The following information was used in making this determination:
>
> - the disability application completed by you or your representative;
>
> - the functional assessment form completed by your physician;
>
> - any additional information submitted by you or your physician(s); and
>
> - your request for appeal of your denied claim and any information accompanying such request.

Id. The Plan also stated that the decision was a final determination under the terms of the Plan. Id.

### D. ERISA Standard of Review

#### 1) Generally

The initial inquiry in determining the merits of the parties' cross-motions for summary judgment is determining what standard of review governs the challenged denial of Plan benefits.

ERISA does not specify the standard of review that a trial court should apply in an action brought pursuant to Section 502(a)(1)(B). In <u>Firestone Tire & Rubber Company v. Bruch</u>, 489 U.S. 101, 115 (1989), the United States Supreme Court held that the default standard of review in such actions is *de novo* unless the plan documents give the administrator discretionary authority to determine eligibility or to construe the terms of the plant. <u>Id.</u> at 115. Where the plan vests the administrator with such discretionary authority, the court instead reviews the administrator's decision to determine whether it was "arbitrary and capricious" and will reverse only where it is clearly unsupported by the evidence or where the administrator failed to comply with the procedures required by the plan. <u>Id.</u> Under this standard, a court will "overturn a decision of the Plan Administrator only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law," and "the Court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." <u>Abnathya v. Hoffman-LaRoche, Inc.</u>, 2 F.3d 40, 45 (3d Cir. 1993).

Here, the litigant's agree that the Plan gives Defendant discretionary authority to determine whether Plaintiff qualified for retirement disability benefits. Document # 13, Defendant's Brief in Support of Motion for summary judgment, page 4; Document # 16, Plaintiff's Brief in Support of Motion for summary judgment, page 2. Therefore, this Court must review the denial of benefits under the arbitrary and capricious standard.

#### 2) The *Pinto/Post* Sliding Scale

Where a fiduciary is found to have a conflict of interest, courts have utilized a "heightened" scrutiny under the arbitrary and capricious standard. <u>See</u> <u>Pinto v. Reliance Standard Life Ins.Comp.</u>, 214 F.3d 377, 387 (3d Cir. 2000); <u>Post v. Hartford Insurance Company</u>, 501 F.3d 154, 161 (3d Cir. 2007).

In <u>Pinto</u>, the Third Circuit followed several other Circuits[3] in formally adopting a "sliding scale" approach whereby the deference given to the Plan Administrator is reduced in accordance with the level of appearance of conflict. 214 F.3d 377, 392 ("We adopt the approach of the sliding scale cases. That approach allows each case to be examined on its facts. The court may take into account the sophistication of the parties, the information accessible to the parties, and the exact financial arrangement between the insurer and the company.").

Thereafter, in its subsequent decision in <u>Post</u>, the Court of Appeals explained that "if the level of conflict is slight, most of the administrator's deference remains intact, and the court applies something similar to traditional arbitrary and capricious review; conversely, if the level of conflict is high, then most of its discretion is stripped away." <u>Post</u>, 501 F.3d at 161. As the Court of Appeals further explained:

> [t]he premise of the sliding scale approach is that courts should examine benefit denials on their facts to determine whether the administrator abused its discretion. To apply the approach, courts first consider the evidence that the administrator acted from an improper motive and heighten their level of scrutiny appropriately. Second, they review the merits of the decision and the evidence of impropriety together to determine whether the administrator properly exercised the discretion accorded it. If so, its decision stands; if not, the court steps into the shoes of the administrator and rules on the merits itself.
>
> At its best, the sliding scale reduces to making a common-sense decision based on the evidence whether the administrator appropriately exercised its discretion. This theme, rather than getting bogged down in trying to find the perfect point on the sliding scale, should be district courts' touchstone.

<u>Post</u>, at 161-62 <u>citing</u> <u>Pinto</u>, 214 F.3d at 391-394.

In June of 2008, the U.S. Supreme Court issued an opinion in <u>Metropolitan Life Insurance v. Glenn</u>, ___ U.S. ___, 128 S.Ct. 2343 (2008). After <u>Glenn</u>, the viability of the <u>Pinto/Post</u> sliding scale of ERISA review is in question. A few weeks ago, when faced with a motion to compel discovery in an ERISA case, U.S. District Judge Nora Barry Fisher summarized the current state of affairs:

---

[3] See <u>Doe v. Group Hospitalization & Medical Services</u>, 3 F.3d 80 (4th Cir. 1993); <u>Vega v. National Life Ins. Services, Inc.</u>, 188 F.3d 287 (5th Cir. 1999); <u>Miller v. Metropolitan Life Ins. Comp.</u>, 925 F.2d 979 (6th Cir. 1991); <u>Woo v. Deluxe Corp.</u>, 144 F.3d 1157 (8th Cir. 1998); and <u>Chambers v. Family Health Plan Corp.</u>, 100 F.3d 818 (10th Cir. 1996).

Shortly after the Court of Appeals' decision in *Post* was issued by the Court of Appeals, the United States Supreme Court issued its decision in *Metropolitan Life Insurance v. Glenn,* --- U.S. ----, 128 S.Ct. 2343, 2348, 171 L.Ed.2d 299 (2008). In *Glenn,* the Supreme Court revisited its earlier decision in *Firestone Tire & Rubber Comp. v. Bruch,* and the appropriate standard of review in an ERISA denial of benefits action in which a conflict of interest exists. *Glenn,* 128 S.Ct. 2347-48. The question before the Supreme Court was "whether the fact that a plan administrator both evaluates claims for benefits and pays benefits claims" creates a conflict of interest under *Firestone* and how this type of conflict "should be taken into account on judicial review of a discretionary benefit determination." *Id.* at 2348, 2350. The Supreme Court found that these circumstances did create a conflict of interest and "that a conflict should 'be weighed as a factor in determining whether there is an abuse of discretion.' " *Id.* at 2350 (*quoting Firestone*, 489 U.S. at 115). In so doing, the Supreme Court held that:

> We do not believe that *Firestone's* statement implies a change in the standard of review, say, from deferential to *de novo* review. Trust law continues to apply a deferential standard of review to the discretionary decisionmaking of a conflicted trustee, while at the same time requiring the reviewing judge to take account of the conflict when determining whether the trustee, substantively or procedurally, has abused his discretion. We see no reason to forsake *Firestone's* reliance upon trust law in this respect.

> Nor would we overturn *Firestone* by adopting a rule that in practice could bring about near universal review by judges *de novo-i.e.,* without deference-of the lion's share of ERISA plan claims denials.

*Id.* (internal citations omitted). Despite this discussion, the Supreme Court did not directly address the applicability of the sliding scale of deferential review discussed in *Post* or by other Courts of Appeals.

As of this writing [February 4, 2009], the United States Court of Appeals for the Third Circuit has not authored a precedential decision analyzing the sliding scale approach outlined in *Post* in light of the Supreme Court's decision in *Glenn.* However, the holding in *Glenn* has been recently discussed in a non-precedential decision by Judge Van Antwerpen of the Court of Appeals. *See Michaels v. The Equitable Life Assur. Society of U.S. Employees, Managers, And Agents Long Term Disability Plan,* --- Fed. Appx. ----, No. 07-4256, 2009 WL 19344 (3rd Cir. Jan.5, 2009) (non-precedential).

In *Michaels,* Judge Van Antwerpen posited that "under *Glenn,* a plan administrator's conflict of interest would not give rise to a heightened version of the arbitrary and capricious standard of review; instead, that conflict would represent one of several factors that informed the inquiry as to whether the administrator abused its discretion." *Michaels,* 2009 WL 19344, at *5. The potential applicability of *Glenn* to the sliding scale approach was not before Judge Van Antwerpen in reaching this conclusion. The appellant in *Michaels* had unsuccessfully argued for a heightened version of the arbitrary and capricious standard of review to the district court and appealed, in part, on those grounds. *Id.* at *5. However, after the decision in *Glenn* was issued, the appellant abandoned this argument. *Id.* Accordingly, Judge Van Antwerpen was not required to directly resolve the issue presently before this Court.

12

The decisions of district courts within the Third Circuit that have addressed this issue have reached differing conclusions. In *Wilce v. Proctor & Gamble Disability Ben. Plan*, Civ. A. No. 3:07-CV-0757, 2008 WL 4279522, at *5-7 (M.D.Pa. Sep.11, 2008), the district court found that "[t]he *Glenn* decision is not at odds with the method of analysis previously endorsed by the Third Circuit Court of Appeals and used by this Court." However, the opposite result was reached by the district court in *Ellis v. Hartford Life And Acc. Ins. Comp.*, Civ. A. No. 08-1606, 2009 WL 154301, at *1 (E.D.Pa. Jan.22, 2009), which stated that the court "shall not apply the heightened standard of review or the sliding scale approach enunciated by the Third Circuit in [ *Pinto* ] because it is no longer viable in light of the Supreme Court's recent decision in [ *Glenn* ]."

Kalp v. Life Ins. Comp. of North America, 2009 WL 261189, at * 3-6 (W.D. Pa. Feb.4, 2009).

Judge Fisher went on to list post-Glenn district court cases within this Circuit that 1) discuss the applicability of Glenn to the sliding scale, but do not resolve the issue[4], and 2) those that discuss

---

[4] "Several district courts within the Third Circuit have issued decisions which generally discuss the potential applicability of *Glenn* to the sliding scale approach, but each have found that the facts of the matter before them did not necessitate a resolution of the issue. *See Klem v. Procter & Gamble Disability Plan*, No. 3:CV-07-284, 2008 WL 3301327, at * (M.D.Pa. Aug.7, 2008) (noting the decision in *Glenn,* but finding that defendant was entitled to summary judgment in its favor even if a "slightly heightened standard" was applied);*Dolfi v. Disability Reinsurance Management Services, Inc.*, 584 F.Supp.2d 709, 730 n. 29 (M.D.Pa. Aug.21, 2008) ("Before *Glenn,* courts in the circuit scrutinized a conflicted-administrator's decision under a heightened arbitrary and capricious standard. In [ *Pinto* ], our Court of Appeals adopted a sliding scale approach to decide to what degree a heightened arbitrary and capricious standard applies when a conflict of interest is present ... [w]hether this approach survives *Glenn* need not be resolved by this Court, since, ... [the plaintiff] has not shown a conflict of interest."); *Post v. Hartford Ins. Comp.*, Civ. A. No. 04-3230, 2008 WL 4444240, at *9-10 (E.D.Pa. Oct.2, 2008) (on remand, the district court generally discussed the Third Circuit's sliding scale standard of review and the application of *Glenn* to the same, but found that the issue did not need to be resolved based on the facts of the case); *Elms v. Prudential Ins. Comp. of America*, Civ. A. No. 06-5127, 2008 WL 4444269, at *8 n. 13 (E.D.Pa. Oct.2, 2008) (acknowledging that "the Supreme Court's decision in [ *Glenn* ] may alter the Third Circuit's sliding scale approach" but finding that "[a]lthough some of the language in the Third Circuit's sliding scale cases discusses heightening of the standard of review, the sliding scale is merely a tool the Third Circuit has employed to help district courts identify and weigh conflicts of interest, which is consistent with the Supreme Court's advice in *Glenn"* ); *Thomas v. Kimberly-Clark Corp*., Civ. A. No. 07-2899, 2008 WL 4877762, at *4-5 (E.D.Pa. Nov. 20, 2008) (discussing *Glenn* generally without resolving the issue of whether a heightened standard continues to exist because the plaintiff did not demonstrate that a conflict of interest was present); *Doe v. Hartford Life and Accident Ins.*

(continued...)

13

the *Pinto/Post* sliding scale without mentioning the impact of the Glenn decision.[5]  Id.

Following this in-depth examination, Judge Fisher concludes that "the post- *Glenn* decisions surveyed by this Court offer little guidance as to the appropriateness of the application of the sliding scale approach and potentially a heightened arbitrary and capricious standard."  Id.

Besides the Circuit's non-precedential opinion in Michaels cited by Judge Fisher, the Third Circuit has also recently inexplicably applied the *Pinto/Post* "heightened arbitrary and capricious standard" without acknowledging the Supreme Court's decision in Glenn in at least one other case.  See Hession v. Prudential Insurance Company of America, 2008 WL 5207089 (3d Cir. Dec. 15, 2008).

What is clear is that the federal courts within this Circuit are not operating with one mind in post-Glenn ERISA cases.[6]  In the absence of any consensus, this Court finds Judge Savage's

---

[4](...continued)
*Comp.*, 2008 WL 5400984 at *5 (D.N.J. Dec.23, 2008) (discussing that the "Third Circuit has yet to rule on whether *Glenn* is consistent with its sliding scale heightened review approach" but finding that it need not resolve the issue as there was a lack of evidence of significant conflict or bias to support the claimed conflict)."  Kalp, 2009 WL 261189, at * 5.

[5]  "Finally, several other district courts within the Third Circuit that have issued decisions after *Glenn* have discussed the applicability of the sliding scale approach without addressing *Glenn* 's applicability to the same. *See Mainieri v. Board of Trustees of Operating Engineer's Local 825 Pension Fund*, 2008 WL 4224924, at *2-3 (D.N.J. Sep.10, 2008) (discussing the heightened arbitrary and capricious standard under Post and *Pinto* without addressing *Glenn;* the district court denied the plaintiff's motion to compel discovery because the discovery sought by plaintiff was related only to the merits of the administrator's decision); *Donachy v. Motion Control Industries*, Civ. A. No. 07-68, 2008 WL 3914867, at *4-5 (W.D.Pa. Aug. 20, 2008) [J.McLaughlin] (finding that the application of the heightened arbitrary and capricious standard under *Post* was not warranted based on the facts of the case without addressing *Glenn* );*Young v. American Intern. Life Assur. Company Of New York*, Civ. A. No. 07-626, 2008 WL 4155082, at *3-6, (W.D.Pa. Sept. 9, 2008) (applying a "moderately heightened arbitrary and capricious standard of review" under *Post,* but not addressing the impact, if any, of *Glenn* )."  Kalp, 2009 WL 261189, at * 6.

[6]  Other Courts of Appeal also lack consensus in the post-Glenn world.  See Champion v. Black & Decker, Inc., 550 F.3d 353, 356 (4th Cir. Dec 19, 2008) ("But now, under Glenn, we must take a new approach.  Applying Glenn, we conclude that in this case a conflict of interest
(continued...)

recent analysis very sound:

> "Glenn makes clear that there is no heightened arbitrary and capricious standard of review. Regardless of the existence of a financial conflict, the same deferential standard of review applies. [...] In Glenn, ... the Supreme Court clarified that this conflict does not alter the standard of review from a deferential one to a *de novo* review. [...] Instead, the conflict is one of several factors relevant in deciding whether the administrator abused its discretion. [...] The term "heightened standard of review" no longer has a place in the lexicon of ERISA disability appeals. Speaking in terms of 'heightening' the level of scrutiny implies an increased standard of review. However, recognizing that the conflict creates a motive to deny a claim does not raise the level of scrutiny. It becomes a part of the review analysis. Where there is evidence of procedural bias, the conflict factor takes on more significance. It may reinforce a finding of a procedural bias because it supplies a motive for the administrator to engage in a faulty procedure. In other words, the presence of the conflict informs, but does not determine, the procedural inquiry. In sum, the sliding scale approach weighs the conflict. It does not heighten the standard of review.

Ellis v. Hartford Life & Accident Insurance Comp., 2009 WL 154301, at * 2-3 (E.D. Pa. Jan. 22, 2009).

So then, although the terms "heightened scrutiny" and "sliding scale" may no longer be appropriate, a court should consider all of the circumstances in the arbitrary and capricious review. In other words, the more suspicion that can be laid at the feet of the Defendant, the more likely it is that Plaintiff has a viable ERISA claim. The standard of review has remained constant since Firestone. The heightened scrutiny of the sliding scale was merely a mechanism for the application of Firestone's arbitrary and capricious standard of review. Simply put, the

---

[6](...continued)
did indeed exist; that we nonetheless review the plan's determination under the familiar abuse-of-discretion standard; and that we consider the conflict only as a factor, among several, in determining whether the plan's determination was reasonable."); Young v. Wal-Mart Stores, Inc., 293 Fed. Appx. 356, 362 (5th Cir. Sept. 22, 2008) ("Although it is not entirely clear [after ...] Glenn whether a "substantial evidence" determination is included in our review to determine if AI Life abused its discretion, we conclude, for the reasons that follow, that AI Life's decision is supported by substantial evidence, and that based on the record as a whole, the decision was not arbitrary, capricious, or an abuse of discretion."); Weber v. GE Group Life Assurance Comp., 541 F.3d 1002, 1010-11 (10th Cir. Sept. 12, 2008) ("To incorporate this (conflict) factor, we have 'crafted a sliding scale approach where the reviewing court will always apply an arbitrary and capricious standard, but will decrease the level of deference given in proportion to the seriousness of the conflict. This approach mirrors the Glenn Court's method of accounting for the conflict-of-interest factor.").

challenged denial of benefits must rise to a level of arbitrary and capriciousness and this Court must consider all the factors in this regard.

### E.    Plaintiff's Motion for summary judgment

#### 1)    Determination that Plaintiff was capable of other work

Despite his treating physician's determination that Plaintiff was disabled, other physicians determinated that Plaintiff could perform other sedentary work.[7]

Plaintiff argues that Defendant acted arbitrarily and capriciously because the physicians who determined that he was able to perform other work are not qualified to make such a determination. Plaintiff believes that "They are not vocational experts who can take the education, training or experience of the Plaintiff and identify jobs that are capable of being performed by the Plaintiff on this basis." Document # 16, page 7. So, Plaintiff argues that Defendant is under an obligation to commission a vocational expert to provide information as to what type of sedentary work Plaintiff could perform.

This Court disagrees with Plaintiff in this regard. The Plan Administrator only needs to make a determination as to whether Plaintiff meets the Plan's own definition of "disability" – in this case under International Paper's Plan, whether Plaintiff is "incapable of performing any occupation or employment for which the participant is qualified." Document # 14-6, page 2. The Plan Administrator is not under any obligation to demonstrate what jobs the Plaintiff is capable of performing. See Conley v. v. Pitney Bowes, 176 F.3d 1044, 1050 (8th Cir. 1999) ("[Plaintiff] suggests that [...] defendants had the burden of showing that jobs were available in the national economy that he was capable of performing. Since he suffered from a nonexertional

_____

[7] "While it is true that there is no treating physician's rule under ERISA, an administrator 'may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician.'" Porter v. Broadspire & The Comcast Long Term Disability Plan, 492 F.Supp.2d 480, 490 (W.D. Pa. 2007) quoting Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003).

impairment, namely, pain, Mr. Conley argues that the defendants could meet this burden only by using vocational expert testimony or other similar evidence. This procedure, however, is the special creature of social security, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2), and has no relevance to Mr. Conley's case.").[8]

Further, the ERISA regulations do not require the use of vocational experts as Plaintiff would have one believe. Instead, the ERISA regulations indicate that the Plan is required to "disclose medical or vocational experts whose advice was obtained on behalf of the plan in connection with a claimant's adverse benefit determination." 29 C.F.R. § 2560.503-1(h)(3)(iv). While the ERISA regulations contemplate the use of vocational experts in claims determinations, they do not mandate it.

Accordingly, the Plan Administrator did not act arbitrarily and capriciously in this regard.

### 2)    Notice Provisions

Next, in support of his motion for summary judgment, Plaintiff agues that Defendant violated ERISA's notice provisions. Plaintiff argues that he was not informed that he could provide additional evidence in support of his appeal or what form the evidence could take and that this lack of notice is contrary to the provisions of the Plan, as well as to the provisions of ERISA regulations.

"ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits." Firestone, 489 U.S. at 113. In that regard, "ERISA provides certain minimal procedural requirements upon an administrator's denial of a benefits claim." Schadler v. Anthem Life Ins. Comp., 147 F.3d 388, 393 (5th Cir. 1998).

---

[8] Additionally, the record reflects that the independent medical reviewers considered Plaintiff's capabilities in determining that he could perform other work. Document # 14-3, page 53 (Dr. Baigelman report). Document # 14-4, page 21 (Dr. Chinsky report); and page 46 (Dr. Augerson report).

ERISA regulations provide that in the initial denial of benefits, "the notification shall set forth, in a manner calculated to be understood by the claimant-- (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and (iv) A description of the plan's review procedures." [9] 29 C.F.R. § 2560.503-1(g) Manner and content of Notification of Benefit Determination.

Defendant's own Plan itself provides that a written notice of denial shall contain, among other things, "1) a description of any additional material or information necessary for you to perfect the claim, and an explanation of why the material or information is necessary, and 2) an explanation of the claims review procedure." Document # 14-5, International Paper Retirement Plan, pages 23-25. Further, the Plan provides: "You must request a review in writing to the plan administrator and should state your name and address, the fact that you are disputing the denial of a claim, the date of the initial notice of denial, the reason(s) for disputing the denial, and any other information the plan administrator may reasonably require in order to make a determination upon review of the claim." Id.[10]

---

[9] Further, the regulations provide:

(h) Appeal of adverse benefit determinations.
(2) Full and fair review. Except as provided in paragraphs (h)(3) and (h)(4) of this section, the claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures--

(ii) Provide claimants the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits;

(iv) Provide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

29 C.F.R. § 2560.503-1.

[10] Additionally, the Plan provides that upon review, the administrator "shall afford you a (continued...)

Here, on February 15, 2005, the Plan informed Plaintiff by letter that his claim for benefits had been denied. The letter explained:

> "You have the right to appeal the denial of your benefit claim. To make an appeal, you must file a written request for review within 180 days of your receipt of this letter."

Document # 14-4, pages 2-3.

Because Plaintiff was not informed that he could submit additional evidence in support of his claim for benefits, the denial letter violated the notice provisions of the Plan itself and ERISA's regulations. "Violations of ERISA and its implementing regulations constitute a significant error on a question of law and may so taint the denial of benefits that it warrants a finding that the plan administrator's decision was arbitrary and capricious." Wilson v. Metropolitan Life Ins. Comp., 2006 WL 3702635, at *5 (E.D. Pa. 2006) quoting Scott v. Hartford Life & Accident Ins. Comp., 2004 WL 1090994, at *4 (E.D. Pa. 2004). ERISA's notice provisions require a Plan Administrator to engage in a "meaningful dialogue" with the participant by explaining the denial of benefits "and clarifying what information would be necessary to bolster the claim." Wilson, 2006 WL 3702635, at *5. Here, Defendant failed in this regard.

In opposition to the Plaintiff's motion for summary judgment, Defendant argues that the Plan "substantially complied" with ERISA's notice regulations.

In reviewing Defendant's substantial compliance argument, this Court is mindful that one of the primary purposes of ERISA is "to protect ... the interests of participants ... by establishing standards of conduct, responsibility, and obligation for fiduciaries" (29 U.S.C. §

---

[10](...continued)
full and fair review of the decision denying the claim and shall: permit the claimant to submit to the plan administrator written comments, documents, records and other information relating to the claim" and "provide a review that takes into account all comments, documents, records, and other information submitted by the clamant relating to the claim, without regard to whether such information was submitted or considered in the initial determination." Document # 14-5, International Paper Retirement Plan, pages 23-25.

1001(b)) and that a "sophistication imbalance" exists between Plaintiff and Defendant.  See Stratton v. E.I.DuPont de Nemours & Comp., 363 F.3d 250, 254 (3d Cir. 2004) (assuming a sophistication imbalance between the parties since there was no reason why the plaintiff would have had any experience with ERISA, and the Defendant which was a large corporation with many employees would have much ERISA experience).

Defendant's February 15th letter did not substantially comply with the procedural requirements.  In another case, more informative language did not pass the substantial compliance test.  It was held that the language *"we would be happy to consider any additional information your client wishes Reliance to review"* in a termination of benefits letter did not substantially comply with ERISA's notice regulations.  See Gagliano v. Reliance Standard Life Ins. Comp., 547 F.3d 230, 237 (4th Cir. 2008).  See also Mazur v. Hartford Life and Acc. Comp., 2007 WL 4233400, at * 14 (W.D.Pa. 2007)(finding substantial compliance where Plan made participant "aware of his right to appeal, [...] and told him that he was free to submit additional information bearing on the claim.").  In this case, Defendant did not even offer to consider any additional information as in Gagliano, let alone inform Plaintiff that he had a right to file supplemental evidence in support of his appeal.

Defendant's reliance on substantial compliance is disingenuous because even when Defendant had the opportunity to remedy the notice issue,  it did not do so.[11]   Plaintiff telephoned Defendant on August 10, 2005, to confirm receipt of the appeal and Plaintiff was advised the appeal had been received, but Plaintiff was not advised that he could provide additional documentation to support his appeal.  Document # 14-3, page 10.  Defendant's own notes indicate that Plaintiff asked whether he should follow up with Wausau, but was advised that his information had been forwarded to Wausau and that he "should receive a follow up

_____

[11]   When considering whether there has been substantial compliance with ERISA's procedural regulations,  the courts may "consider all communications" between the parties "to determine whether the information provided was sufficient under the circumstances."  Moore v. LaFayette Life Ins.Comp., 458 F.3d 416, 436 (6th Cir. 2006).  Oral communications may be considered in this regard.  White v. Aetna Life Ins.Comp., 210 F.3d 412, 417 (D.C. Cir. 2000).

within 30 days." Id. Then, by notation dated August 30, 2005, Defendant International Paper indicates "forwarding to DRC for review: no additional medical documentation was submitted for the claim which was denied previously with DRC approval. Forwarding Wausau's recommendation." Id.

Plaintiff was never informed either in writing, or by telephone, that he could supplement his appeal. Defendant has not engaged in any kind of "meaningful dialogue" with Plaintiff in regards to his right to appeal the denial of disability benefits.

### 3) Determination by same entity

Next, Plaintiff argues that the decisionmaker for both the initial denial of benefits and the appeal was the same entity[12], which violates 29 C.F.R. § 2560.503-1(h)(3)(ii), as well as the terms of the Plan.

ERISA regulations provide that on appeal the claims procedures must

> (ii) Provide for a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual;

> (iii) Provide that, in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment, [...] the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment; [...]

> (v) Provide that the health care professional engaged for purposes of a consultation under paragraph (h)(3)(iii) of this section shall be an individual who is neither an individual who was consulted in connection with the adverse benefit determination that is the subject of the appeal, nor the subordinate of any such individual; and

29 C.F.R. § 2560.503-1(h)(3).

---

[12] Plaintiff argues that the Disability Retirement Committee was the same entity in both the denial of initial benefits and the appeal determination. However, the records before this Court do not indicate the makeup of the committee. Because this Court is recommending the remand of this matter to the Plan Administrator on the other bases, this argument need not be specifically addressed.

International Paper's Plan states that, on appeal it will: "provide a review that does not afford deference to the initial claim determination and that is conducted by a plan fiduciary other than the person who conducted the initial claim determination (or a subordinate of that person)" and "ensure that any health care professional consulted during the review is someone other than the person consulted in the initial claim determination (or a subordinate of that person)." Document # 14-5, International Paper Retirement Plan, pages 23-25.

The initial review document was dated November 17, 2004, and was signed by both Dr. Baigelman and Nurse Consultant Barbara Beastrom. Document # 14-3, pages 49-55. This review was inconclusive and further information was requested by way of an independent medical examination.

Further information was gathered, specifically independent exams by Dr. Richards, a psychiatrist, and Dr. Chinsky, a pulmonologist. In a report dated January 31, 2005, Nurse Consultant Beastrom made the determination that Plaintiff was not totally disabled. The signature line for the doctor was left blank. Document # 14-3, pages 77-79.

To evaluate Plaintiff's appeal, the Plan commissioned William Augerson, M.D., a board-certified internist, to perform an independent medical review of the claim for benefits. Document # 14-4, pages 43-47. The report issued by Dr. Augerson indicates that Plaintiff's medical records from Chinsky, Richards, Gunn, Bonham, Sullivan and McLaughlin. Id. Dr. Augerson mentions that Plaintiff "is unable to do his regular heavy work, but is capable of light to sedentary work. (See IME 01/26/2005)." Id. at 46. This date refers specifically to Dr. Chinsky's report. Dr. Augerson's report is dated August 24, 2005 and is signed by himself and Nurse Consultant Burton. Id. at 48. The report also indicates that Nurse Consultant Beastrom participated in the review. Id. at 43.

So then, Nurse Beastrom participated in both parts of the initial review; the report dated November 17, 2004 and signed by herself and Dr. Baigelman (document # 14-3, pages 49-55 ) and the report dated January 31, 2005, and signed only by her (document # 14-3, pages 77-79). Further, the records indicate that Nurse Beastrom participated in some capacity in Dr. Augerson's report (dated August 24, 2005, and signed by Dr. Augerson and Nurse Burton;

Document # 14-4, pages 43-47).  By making the initial determination and then consulting on the appeal, Beastrom's participation violates ERISA regulations.  <u>See</u> 29 C.F.R. § 2560.503-1(h)(3)(ii) and (v).

### 4)    Remedy

As relief, Plaintiff seeks the recovery of benefits and enforcement of his rights under International Paper's Retirement Plan.  Document # 1, page 3.  In Plaintiff's motion for summary judgment, he specifically requests that Defendant shall be ordered to "grant the disability retirement pension to Plaintiff effective March 9, 2004, with interest on all back payments due."  Document # 15-2.

However, the appropriate course is to remand this matter to the Plan Administrator. <u>Syed v. Hercules Inc.</u>, 214 F.3d 155, 162 (3d Cir. 2000) ("Thus, the remedy for a violation of § 503 is to remand to the plan administrator so the claimant gets the benefit of a full and fair review.").  <u>See</u> <u>also</u> <u>Krauss v. Oxford Health Plans, Inc.</u>, 517 F.3d 614, 630 (2d Cir.2008) ("A full and fair review concerns a beneficiary's procedural rights, for which the typical remedy is remand for further administrative review."); <u>Buffonge v. Prudential Ins. Comp. of America</u>, 426 F.3d 20, 31 (1st Cir.2005) (where the "problem is with the integrity of [the plan's] decision-making process," rather than "that [a claimant] was denied benefits to which he was clearly entitled," the appropriate remedy generally is remand to the plan administrator.); <u>Elliott v. Metropolitan Life Ins. Comp</u>, 473 F.3d 613 (6th Cir. 2006) (adopting First Circuit's holding in <u>Buffonge</u>).

### F.    Defendant's Motion for summary judgment

Defendant argues that summary judgment should be granted in its favor because the Plan's denial of disability benefits is supported by substantial evidence and does not rise to the level of arbitrariness or caprice necessary to overturn the denial.  Document # 13.  This Court

disagrees for the reasons explained above, and accordingly, Defendant's motion for summary judgment should be denied.

### III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that the motion for summary judgment filed by Defendant [Document # 12] be denied.

It is further recommended that the motion for summary judgment filed by Plaintiff [Document # 15] be granted in part and denied in part, in that summary judgment be granted in favor of Plaintiff, but that this matter be remanded to the Plan Administrator.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  No extensions of time will be granted.  Failure to timely file objections may constitute a waiver of appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

S/Susan Paradise Baxter
SUSAN PARADISE BAXTER
CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: February 27, 2009